UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

_____

CHRISTOPHER MO., KIMBERLY MO.,
MICHAEL WR., and Virginia WR. as next
friend of MICHAEL WR., individually and on
behalf of others similarly situated,

       Plaintiffs,

v.                              Case No.: 4:16cv780-RH/CAS

MIKE CARROLL, in his official Capacity
as Secretary of Florida's Department
of Children and Families.

       Defendant.

_____

## PLAINTIFFS' AMENDED REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Cindy Huddleston
Kathy Grunewald
Florida Legal Services, Inc.
2425 Torreya Drive
Tallahassee, FL 32303
Telephone: (850) 385-7900
Facsimile: (850) 385-9998
cindy@floridalegal.org
kathy@floridalegal.org

Katherine DeBriere
Northeast Florida Medical
Legal Partnership
Jacksonville Area Legal Aid, Inc.
126 W. Adams Street
Jacksonville, FL 32202
Telephone: (904) 356-8371, ext. 333
Facsimile: (904) 356-8780
katy.debriere@jaxlegalaid.org

NATIONAL CENTER FOR
LAW & ECONOMIC JUSTICE, INC.
Mary R. Mannix
Greg Bass
Petra T. Tasheff
Francisca D. Fajana
275 Seventh Avenue, Suite 1506
New York, NY 10001
Telephone: (212) 633-6967
mannix@nclej.org


Counsel for Plaintiffs and
Proposed Class Counsel

# **TABLE OF CONTENTS**

I.      Introduction...................................................................................................1

II.     Factual Background .......................................................................................2

III.    Plaintiffs Clearly Meet the Standard for Preliminary Relief..........................2

       A.      Defendant's Inadequate Sanction Notice ("NOCA")
           Violates the SNAP Act and Due Process ..............................................2

       B.      Defendant's Failure to Provide an Adequate Notice
           of ABAWD Status Determination Violates SNAP Law
           and Due Process .................................................................................5

IV.     Plaintiffs Have Established Irreparable Harm...............................................10

V.      The Balance of Equities Favors Plaintiffs ....................................................12

VI.     Plaintiffs Satisfy All Article III "Case or Controversy" Requirements ........13

       A.      The Named Plaintiffs Have Standing..................................................13

       B.      Plaintiffs' Action is Not Moot............................................................14

VII.    CONCLUSION..............................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Barry v. Corrigan,*.................................................................................4
    79 F.Supp. 3d 712 (E.D. Mich. 2015)

*Barry v. Corrigan,*.................................................................................4
    834 F.3d 706 (6th Cir. 2016).

*Bliek v. Palmer*,..................................................................................13
    916 F.Supp. 1475, 1490 (N.D. IA 1996)

*Bliek v. Palmer*,..................................................................................13
    *aff''d*, 102 F.3d 1472 (8th Cir.1997)

*Cosby v. Ward*,.....................................................................................7
    843 F.2d 967 (7th Cir. 1988)

*Fla. Family Policy Council v. Freeman,* ................................................14
    561 F.3d 1246 (11th Cir. 2009)

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,.........................14
    528 U.S. 167 (2000)

*Genesis HealthCare Corp. v. Symczyk,* ................................................15
    133 S. Ct. 1523 (2013)

*Goldberg v. Kelly*,..................................................................... 10, 13
    397 U.S. 254 (1970)

*Jeffrey M. Stein, D.D.S., M.S.D., P.A. v. Buccaneers L.P.*, .....................15
    772 F.3d 698 (11th Cir. 2014)

*Patsy v. Bd. of Regents*,..........................................................................11
    457 U.S. 496 (1982)

*Robidoux v. Celani*,...............................................................................15
    987 F.2d 931 (2d Cir. 1993)

*Sec. of Labor v. Burger King Corp.*, ....................................................................14
    955 F.2d 681 (11th Cir. 1992)

*Willis v. Lascaris*, ...............................................................................................13
    499 F.Supp. 749 (N.D.N.Y.1980)

*Walker v. City of New York*, ...................................................................................8
    2012 U.S. Dist. LEXIS 103792 (S.D.N.Y. Jul. 24, 2012)

*Wright v. Roanoke Redevelopment & Hous. Auth.*, ...............................................11
    479 U.S. 418 (1987)

*Wylie v. Kitchin*, ..................................................................................................12
    589 F.Supp. 505 (N.D.N.Y. 1984)

## FEDERAL STATUTES

7 U.S.C. 2011 .......................................................................................................12

7 U.S.C. 2015(d) .................................................................................................4, 5

7 U.S.C. 2015(o) .................................................................................................4, 5

7 U.S.C. 2020(e)(10) ..............................................................................................4

42 U.S.C. § 1983 ..................................................................................................11

## FEDERAL RULES AND REGULATIONS

7 C.F.R. 271.1(a) ..................................................................................................12

7 C.F.R. 273.7 ........................................................................................................4

7 C.F.R. 273.7(c)(1) ...............................................................................................9

7 C.F.R. 273.7(c)(2) ................................................................................5

7 C.F.R. 273.7(f)(1)(ii) ............................................................................4

7 C.F.R. 273.7(g) ..................................................................................11

7 C.F.R. 273.13(a)(2) ..............................................................................4

7 C.F.R. 273.15(a) ..................................................................................6

7 C.F.R. 273.17 ....................................................................................13

7 C.F.R. 273.24 .................................................................................4, 5

7 C.F.R. 273.24(d) ................................................................................10

7 C.F.R. 273.24 (e) ...............................................................................11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

_____

CHRISTOPHER MO., KIMBERLY MO.,                Case No.: 4:16cv780-RH/CAS
MICHAEL WR., and VIRGINIA WR. as next
friend of MICHAEL WR., individually and on
behalf of others similarly situated,           **AMENDED REPLY
                                               MEMORANDUM
                                               OF LAW IN SUPPORT OF
                    Plaintiffs,                PLAINITFFS' MOTION
                                               FOR PRELIMINARY
v.                                             INJUNCTION[1]**

MIKE CARROLL, in his official Capacity
as Secretary of Florida's Department of
Children and Families,

                    Defendant.
_____

## I.    Introduction

Plaintiffs seek preliminary relief to enjoin Defendant's ongoing failure to

provide constitutionally and statutorily required adequate notice in its

implementation of the complex and inter-related ABAWD and E&T rules. The

central legal issues are the legal adequacy of pre-termination sanction notice

(NOCA) and Defendant's separate legal obligation to provide adequate notice to

individuals – at the time it finds them to be ABAWDs. Rather than demonstrating

_____

[1] Amended to correct typographic errors and add omitted Tasheff Decl. paragraph
references.

1

that the notices satisfy SNAP law and Due Process, Defendant seeks to divert attention with assertions regarding his purported extensive implementation planning and staff training. As explained in the Petra Tasheff Declaration, the narrative Defendant seeks to advance of an adequate process is highly flawed.

FNS approval of the ABAWD implementation plans, mentioned in passing by Defendant (Deft MOL, 11), is irrelevant. The bureaucratic action was merely a conclusory statement by a regional official without any legal analysis or consideration of the specific issues in this case. In any event, it is for this Court to decide Due Process issues.

## II. Factual Background

For a full statement of facts relevant to this motion, the Court is referred to the Petra Tasheff Declaration, dated February 3, 2017.

## III.   Plaintiffs Clearly Meet the Standard for Preliminary Relief

Plaintiffs seek a preliminary injunction preserving the status quo, ongoing receipt of SNAP for class members, until Defendant complies with federal SNAP law and Due Process. Plaintiffs meet the standard for preliminary relief. Pls. MOL, 4. However, even if, as Defendant asserts, Plaintiffs' request is construed as one for a mandatory injunction (Def. MOL, 17), Plaintiffs meet the higher standard since the facts and law clearly favor Plaintiffs.

### A.   Defendant's Inadequate Sanction Notice ("NOCA") Violates the SNAP Act and Due Process.

2

Defendants utterly fail to rebut that the boilerplate NOCA violates the rigorous standards for adequate notice of adverse actions mandated by federal SNAP law and Due Process. Furthermore, Defendant's defense, unsupported by case law, that the boilerplate NOCA complies with federal regulations by giving a reason for the action and advising the recipient to comply in order to avoid the penalty (Def. MOL, 23–26) fails to address the numerous cases cited by Plaintiffs invalidating similar generic notices. Pls. MOL, 25–33.

The NOCA provides in relevant part:

> "You did not complete the works requirements for food assistance program – first non-compliance" and "the head of your Food Assistance household, or a household member, did not complete a work requirement without having a good reason. If you comply with the…work requirements, before the begin date of the penalty, we will not impose the penalty. To comply with the …work requirements, contact Career Source … If you have a good reason for not complying with work requirements and can give us proof of the reason, contact DCF at . . . ."

See Pls. MOL, 26.

In a recent analogous case challenging Michigan's similarly generic notices terminating SNAP "due to a criminal justice disqualification" and instructing the recipient to contact law enforcement to resolve, the District Court, in a thorough analysis of the extensive case law involving challenges to public benefit notices, held the notice violated SNAP law and Due Process. The Court

3

enjoined Defendant from terminating SNAP without providing detailed notice of the factual and legal basis for the action, including the specific type of criminal justice disqualification, the name of the person disqualified, specific information regarding the relevant warrant (e.g. warrant number), the jurisdiction where the warrant was issued, the name of a person with knowledge of the matter who could provide additional information, and the specific acts the person could take to resolve the disqualification. *Barry v. Corrigan*, 79 F.Supp. 3d 712, 741–46, 752–53, *aff'd*, 834 F.3d 706 (6th Cir. 2016). Here, as in *Barry*, Defendant's NOCA fails to provide specific, individualized information about: the precise nature of the individual's alleged failure to comply; how to avoid the sanction, how to qualify for exemptions; good cause; and the specific action the recipient can take to cure any noncompliance and avoid sanction.

Finally, Defendant unsuccessfully devotes 3.5 pages to allege compliance with SNAP regulations through a chart in which NOCA sections are cross-referenced to selected elements of 7 C.F.R. 273.13(a)(2). This simplistic chart, addressing NOCA elements not in contention, ignores or fails to refute any of the NOCA's critical deficiencies discussed above.

In sum, Plaintiffs clearly show that the NOCA violates 7 U.S.C. 2020(e)(10); 7 C.F.R. 273.13(a)(2); 7 U.S.C. 2015(d), (o) as implemented by 7

C.F.R. 273.7, and (f)(1)(ii) (notice must contain the "particular act of

noncompliance" (emphasis added)); 7 C.F.R. 273.24; and Due Process.

**B.    Defendant's Failure to Provide an Adequate Notice of ABAWD Status Determination Violates SNAP Law and Due Process.**

Defendant misinterprets Plaintiffs' claims as a challenge to the one-time

December 2015 general notice ("Special Notice"), Def. MOL, 17–18, 22.

However, Plaintiffs' claim is that, as an ongoing matter for all who are subject to

ABAWD post-January 2016, Defendant fails to provide adequate notice of

ABAWD Status Determination (status notice). Compl. ¶124.  Plaintiffs also

demonstrate that SNAP law and Due Process require Defendant's agency, DCF, to

provide such individualized notice to individuals when DCF first determines them

to be ABAWDS. 7 U.S.C. 2015(d), (o); 7 C.F.R. 273.7(c)(2), 273.24. Pls. MOL,

34–39.

The right to an adequate individualized notice of this critical agency

decision, provided by Defendant when he first classifies a person as an ABAWD,

is premised on the significant consequences that attach upon determination of

ABAWD status. Specifically, the determination of ABAWD status triggers the

beginning of the recipient's 3-month time limit on SNAP receipt *unless* she shows

DCF that it wrongly determined her non-exempt or complies with complicated

work requirements (and as to which non-compliance leads to sanctions).

Every SNAP recipient needs adequate notice of DCF's ABAWD decision at the earliest time possible. With this information, a recipient can immediately challenge DCF's determination that she is an ABAWD, seek an exemption, or take steps to comply so as not to begin exhausting the SNAP 3-month time limit or risk an escalating E&T sanction process. Defendant obviously decides the individual's ABAWD status and communicates this decision to DEO, which then imposes the mandatory work obligations. SNAP law, implementing regulations, and Due Process as well as basic fairness require that DCF *also* inform the recipient of this decision and its consequences.[2]

Defendant's arguments to the contrary are unavailing.  First, Defendant's argument that its ABAWD's decision is not agency action and that recipients do not have a property right in the ABAWD classification that implicates Due Process is wrong. Def. MOL, 19–20. Defendant's decision that a person is ABAWD, while not reduction, denial, or termination of SNAP, is clearly agency "action…which affects the participation of the household in [SNAP]" thereby entitling the individual to a fair hearing. 7 C.F.R. 273.15(a). And SNAP applicants and recipients unquestionably have a protected property interest in SNAP. Pls. MOL, 30.  Given the consequences of this action, Due Process requires written notice of

---

[2] For example, for a new applicant, DCF should include individualized information about its ABAWD decision in the initial notice of SNAP eligibility. Tasheff Decl., ¶ 72, Exh. J.

this status decision *at the relevant time* so the recipient can protect her rights and seek a fair hearing, if necessary.[3]

In *Cosby v. Ward*, 843 F.2d 967 (7th Cir. 1988), the court addressed a similar due process challenge to unemployment compensation notices issued to claimants who were subject to job search requirements as a condition of receiving benefits. The agency used "objective rules of thumb to determine claimants' eligibility for benefits," but claimants did not know about the rules of thumb, and the agency used their inadequate answers to questions about their work-search to disqualify them from benefits. *Id.*, 973. The *Cosby* court, finding the notice violated Due Process, held:

> The risk of erroneous deprivation is great here because, to the extent that claimants were not apprised of the rules of thumb, it is extremely unlikely that they would be able to correctly answer the hypothetical questions on the claimant questionnaires, or to modify their work searches accordingly. The state cannot be said to have an interest in depriving unwitting claimants of benefits to which they may be entitled, and the burden of modifying its procedures to give claimants adequate notice of the rules they have violated before they come before the claims adjudicator is slight. [D]ue process requires the state to provide claimants with notice of exactly how their work searches have been inadequate *before* the claimants must face the claims adjudicators.

---

[3] Plaintiffs do not seek "advance" notice, as Defendant asserts (Def. MOL, 19).

*Id*., 984 (citation and interior quotation marks omitted). The *Cosby* court found that notices issued to claimants "only hinted at the requirements imposed by the five rules of thumb" and it would have been "no more difficult" for the defendant agency to set out a checklist describing them, "than it was for the state merely to allude to the requirements and trust the claimants to infer from the notices' general language five specific rules." *Id*. at 985.

Here, Defendant's decision to begin the ABAWD 3-month time clock and work obligations because it classifies a recipient as an ABAWD cannot be considered anything other than "agency action", and due process requires adequate notice of such decision *before* the recipient is caught up in the DEO E&T system.

Defendant's reliance on *Walker v. City of New York*, 2012 U.S. Dist. LEXIS 103792 (S.D.N.Y. Jul. 24, 2012) (Def. MOL, 20) a totally inapplicable and irrelevant decision involving a prison official's classification of inmates, is inapposite. The *Walker* court recognized that prison officials "have 'full discretion' to control the conditions of confinement…and prisoners have 'no legitimate statutory or constitutional entitlement' sufficient to invoke due process.…" *Id*.,*6 (citations omitted). In contrast, SNAP recipients have a clear property interest in their receipt of SNAP (Pls. MOL, 30) and thus in assuring that Defendant's procedures comply with due process.

While Defendant acknowledges that the general December 2015 notice was not a status determination notice (Def. MOL, 22), Defendant's suggestion that a Fall 2015 general training and information blitz substitutes for individualized notice (Def. MOL, 10–11), is incorrect. Defendant also notes *DCF*'s obligation to provide written notice of work obligations when a person becomes subject to such, 7 C.F.R. 273.7(c)(1) (Def. MOL, 19–20), but does not say that DCF itself provides such notice.

Defendant's suggestion that the Notice of Mandatory Participation (Travis Dec., Exh. B, ECF 38-1), *subsequently sent by another agency – DEO,* discharges *DCF'*s obligations under SNAP law and Due Process (Def. MOL, 22–23) has no legal support. Practically speaking, recipients need notice of the ABAWD decision *from DCF* before they are caught up in the separate DEO system which cannot address ABAWD exemption issues or the correctness of *DCF's* ABAWD decision. Moreover, the NOMP omits critical information, e.g. the basis for DCF's ABAWD decision, exemptions and exceptions, how to claim them, or how to request a hearing. Instead, it simply directs the individual to begin participation in work activities. Moreover, while DEO's forthcoming revised NOMP (Travis Dec. Exh. G, ECF 38-1) adds information about exemptions on the last page following 3-pages of instructions about beginning work participation and possible sanctions for failure to comply, this information – albeit it too little and too late - is the type of

9

information that *DCF* should specifically elicit before it makes its ABAWD

decision. This information should inform DCF's decision about an individual's

ABAWD status and be reflected in the ABAWD status notice provided the

recipient.

In sum, Plaintiffs have clearly shown that Defendant's failure to provide

adequate notice of ABAWD status determination violates SNAP law and Due

Process.

## IV.   Plaintiffs Have Established Irreparable Harm

Defendant asserts, again without legal support, that discontinuation of SNAP

is not irreparable harm, Def. MOL, 31, and continues to discount the "brutal need"

of impoverished households, *Goldberg v. Kelly*, 397 U.S. 254, 261 (1970), seeking

subsistence benefits to alleviate hunger. Defendant does not rebut case law

establishing that loss of SNAP is inherently irreparable harm warranting

preliminary relief. Pls. MOL, 21–22, nor the harm suffered by the named Plaintiffs.

*Id*., 23.

Defendant does not address the cases holding that deprivation of

constitutional rights constitutes irreparable injury. *Id*., at 24. Instead, he speciously

argues that irreparable harm cannot be demonstrated because Plaintiffs could

"mitigate" their "damages" by requesting an administrative hearing or reapplying.

Def. MOL, 31–33. First, Defendant's argument that individuals can simply reapply

10

and comply with ABAWD rules belies the fact that termination of SNAP results by definition in low-income households experiencing periods of non-receipt of benefits and ensuing hunger, before eligibility can be re-established.

Second, SNAP recipients whose three countable months were presumptively exhausted without Defendant's consideration of their actual exemption or compliance status cannot regain that three-month period. In addition, an ABAWD must comply with work rules or demonstrate an exemption for 30 consecutive days to regain eligibility once the initial three months of benefits is exhausted.  7 C.F.R. 273.24(d). Further, reinstatement to benefits through compliance with ABAWD requirements gains an additional three months of SNAP only once in a three-year period. *Id.*, 273.24(e). Reapplication following an E&T sanction will establish eligibility for SNAP only after the mandatory disqualification period has ended, unless the individual is determined work exempt. *Id.*, 273.7(g). Defendant ignores this continuing harm.

Third, Plaintiffs are not required to exhaust administrative remedies before bringing a 42 U.S.C. § 1983 action to enforce rights conferred by federal law. *Patsy v. Bd. of Regents*, 457 U.S. 496 (1982); *see Wright v. Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 427–28 (1987) ("the existence of a state administrative remedy does not ordinarily foreclose resort to § 1983") (citing *Patsy*, 457 U.S. at 516)). Even assuming Plaintiffs are able to challenge

11

Defendant's wrongful action in terminating their SNAP, eventual restoration of lost benefits after a fair hearing would not prevent irreparable harm. *Wylie v. Kitchin*, 589 F.Supp. 505, 507 (N.D.N.Y. 1984) ("The hunger or indignities that one may have to suffer from the unavailability of funds cannot be fully remedied by future payment of those sums.") (citation omitted).

**V.      The Balance of Equities Favors Plaintiffs**.

SNAP was created to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. 2011; 7 C.F.R. 271.1(a). Accurate ABAWD notices for all SNAP recipients facing termination as alleged ABAWDs are wholly consistent with these fundamental goals.

The harm facing Plaintiffs and the putative class far outweighs any minimal harm Defendant might experience. Requiring Defendant to issue notices that comply with SNAP law and Due Process pose no harm to the Defendant – he is simply being required to do that which the law requires.

Defendant also summarily contends, Def. MOL, 33–34, that preliminary relief would compel him to violate federal law. He is wrong. First, while Plaintiffs seek to stay terminations until Defendant issues proper notices, nothing precludes Defendant from immediately issuing those notices if Plaintiffs prevail. Second, if Defendant delays in correcting notices and issues SNAP benefits during that delay,

the sole harm to Defendant is that he may not be eligible for federal reimbursement for any SNAP benefits wrongly issued. However, the SNAP law imposes an affirmative duty on Defendant to comply with SNAP rules in issuing benefits and ensure correction of underpayments when he learns he has not, such as by wrongfully terminating SNAP without proper notice. 7 C.F.R. 273.17.

The harm Defendant may suffer by any possible over-issuance of SNAP caused by his own errors and delayed action to correct has been held to be negligible. *Goldberg*, 397 U.S. at 266; *Bliek v. Palmer*, 916 F.Supp. 1475, 1490 (N.D. IA 1996), *aff''d*, 102 F.3d 1472 (8th Cir. 1997); *Willis v. Lascaris*, 499 F.Supp. 749, 759–60 (N.D.N.Y.1980). Finally, if Defendant discovers he has issued SNAP to an ineligible household, Defendant has the authority to recover such incorrect payments. 7 C.F.R. 273.18.

## VI.  Plaintiffs Satisfy All Article III "Case or Controversy" Requirements

Defendant makes the conclusory assertion, unsupported by either case law or the record, that "the named Plaintiffs lack standing to sue for relief." Def. MOL, 2. Defendant suggests that his granting of SNAP to the Plaintiffs, after filing of the Complaint, renders their individual claims moot. Def. MOL, 2–3. Both claims are wrong.

### A. The Named Plaintiffs Have Standing.

13

Plaintiffs easily meet the constitutionally mandated components of standing. At the commencement of this action, the relevant time period for determining standing, *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)) (defining standing as "[t]he requisite personal interest that must exist at the commencement of the litigation"), each suffered the loss of SNAP. That loss constituted a concrete and particularized injury and was a direct result of the issuance of unlawful notice by Defendant. Plaintiffs challenge the NOCA (and failure to provide status determination notice) as violative of due process – a determination this Court is clearly authorized to make. Plaintiffs, therefore, have standing. *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009).

### B.  Plaintiffs' Action Is Not Moot.

Defendant's subsequent granting of SNAP to Plaintiffs resulted from the mutual cooperation of the parties' counsel. Plaintiffs sought immediate relief following the filing of the Complaint, through reapplying for SNAP, at the behest of Defendant, rather than seek a TRO. Tasheff Decl. at 11-15; Exhs. A, B and C. Defendant's contention that Plaintiffs' claims are moot by his having effectively "cured" the deficiencies of previously issued ABAWD notices through granting benefits after an individual reapplication process, is unavailing. The rule is this Circuit has long been "that 'voluntary cessation of allegedly illegal conduct does

14

not deprive the tribunal of power to hear and determine the case, i.e., does not

make the case moot.'" *Sec. of Labor v. Burger King Corp*., 955 F.2d 681, 684

(11th Cir. 1992).

This case is a putative class action.  "[W]here a named plaintiff's claim is

"inherently transitory," and becomes moot prior to certification, a motion for

certification may 'relate back' to the filing of the complaint." *Genesis HealthCare*

*Corp. v. Symczyk,* 133 S. Ct. 1523, 1528 (2013).

As the Eleventh Circuit has explained:

> The relation-back doctrine allows a named plaintiff whose individual claims
> are moot to represent class members . . . because the named plaintiff will
> adequately present the class claims and unless the named plaintiff is allowed
> to do so the class claims will be capable of repetition, yet evading review.
> And when, as here, the relation-back doctrine applies, certification relates
> back not to the filing of the motion to certify but "to the filing of the
> complaint."

*Jeffrey M. Stein, D.D.S., M.S.D., P.A. v. Buccaneers L.P*., 772 F.3d 698 (11th Cir.

2014). Plaintiff's diligent pursuit of class claims demonstrates the requisite

personal stake in the outcome of the controversy. *Jeffrey M. Stein*, 772 F.3d at 707.

In *Robidoux v. Celani*, 987 F.2d 931, 938–39 (2d Cir. 1993), the court cited the

transitory nature of the named plaintiffs' claims in holding that their receipt of

unlawfully delayed public assistance benefits after commencement of suit did not

moot the putative class action.

## VII.   CONCLUSION

Plaintiffs respectfully request that this Court grant their motion.


Dated: February 24, 2017

Respectfully Submitted


Cindy Huddleston
Fla. Bar No.: 0383041
Kathy Grunewald
Fla. Bar No.: 0513090
Florida Legal Services, Inc.
2425 Torreya Drive
Tallahassee, FL 32303
Telephone: (850) 385-7900
Facsimile: (850) 385-9998
cindy@floridalegal.org
kathy@floridalegal.org

Katherine DeBriere
Fla. Bar No.: 58506
Northeast Florida Medical Legal Partnership
Jacksonville Area Legal Aid, Inc.
126 W. Adams Street
Jacksonville, FL 32202
Telephone: (904) 356-8371, ext. 333
Facsimile: (904) 356-8780
katy.debriere@jaxlegalaid.org

NATIONAL CENTER FOR
LAW & ECONOMIC JUSTICE, INC.
Mary R. Mannix
Greg Bass
Petra T. Tasheff
Francisca D. Fajana
275 Seventh Avenue, Suite 1506

New York, NY 10001
Telephone: (212) 633-6967
cohan@nclej.org


Counsel for Plaintiffs and
Proposed Class Counsel


By:   */s/ Greg Bass*
Greg Bass


## CERTIFICATION OF WORD LIMIT

Pursuant to Local Rule 7.1(F), I hereby certify that the within memorandum of law does not exceed 3,200 words.

Dated:  February 24, 2017                    */s/ Greg Bass*
Greg Bass