UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

_____

CHRISTOPHER MO., KIMBERLY MO.,
MICHAEL WR., AND VIRGINIA WR. as next
friend of MICHAEL WR., individually and on
behalf of others similarly situated,

       Plaintiffs,

v.                                  Case No.: 4:16cv780-RH/CAS

MIKE CARROLL, in his official Capacity
as Secretary of Florida's Department
of Children and Families.

       Defendant.

_____

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Cindy Huddleston
Fla. Bar No.: 0383041
Kathy Grunewald
Fla. Bar No.: 0513090
Florida Legal Services, Inc.
2425 Torreya Drive
Tallahassee, FL 32303
Telephone: (850) 385-7900
Facsimile: (850) 385-9998
cindy@floridalegal.org
kathy@floridalegal.org

Katherine DeBriere
Fla. Bar No.: 58506

Northeast Florida Medical Legal Partnership
Jacksonville Area Legal Aid, Inc.
126 W. Adams Street
Jacksonville, FL 32202
Telephone: (904) 356-8371, ext. 333
Facsimile: (904) 356-8780
katy.debriere@jaxlegalaid.org


NATIONAL CENTER FOR
LAW & ECONOMIC JUSTICE, INC.
Mary R. Mannix
Greg Bass
Petra T. Tasheff
Francisca D. Fajana
275 Seventh Avenue, Suite 1506
New York, NY 10001
Telephone: (212) 633-6967
mannix@nclej.org


Counsel for Plaintiffs and
Proposed Class Counsel

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................................................1

STANDARD OF REVIEW ......................................................................1

I.     PLAINTIFFS' PUTATIVE CLASS ACTION IS NOT MOOT ..........2

       A.     The Claims of the Named Plaintiffs Are Not Moot ....................3

       B.     The Voluntary Cessation Exception to Mootness
              Also Preserves the Named Plaintiffs' Claims............................4

       C.     The "Relation Back" Doctrine Preserves Plaintiffs'
              Action for Resolution of Class Members' Claims......................7

II.    PLAINTIFFS' COMPLAINT PROVIDES FAIR NOTICE
       OF PLAINTIFFS' CLAIMS ...............................................................11

III.   DEFENDANT'S INADEQUATE NOTICE OF CASE ACTION
       ("NOCA") IMPOSING A SANCTION VIOLATES THE
       SNAP ACT, ITS IMPLEMENTING REGULATIONS, AND
       DUE PROCESS ...................................................................................13

       A.     Defendant Fails to Establish that the NOCA
              Complies with the Requirements of the SNAP Act
              And Implementing Regulations ................................................14

       B.     Defendant Fails to Establish that the NOCA Complies
              With Due Process......................................................................18

IV.     THE DEPARTMENT OF ECONOMIC OPPORTUNITY'S
        UNADOPTED REVISED NOTICE OF MANDATORY
        PARTICIPATION DOES NOT MOOT PLAINTIFFS' CLAIMS ....19

V.      DEFENDANT'S SANCTIONING OF PLAINTIFFS'
        CLASS SNAP BENEFITS WITHOUT A FAIR PROCESS
        FOR MAKING INDIVIDUALIZED ABAWD STATUS
        DETERMINATIONS VIOLATES THE SNAP ACT,
        IMPLEMENTING REGULATIONS AND DUE PROCESS ...........24

VI.     THE ELEVENTH AMENDMENT DOES NOT PRECLUDE
        AN AWARD OF RELIEF IN THIS ACTION ...................................28

VII.    VIRGINIA WR. CAN PROCEED AS THE "NEXT FRIEND"
        OF MICHAEL WR. ..............................................................................32

CONCLUSION .....................................................................................................34

ii

# TABLE OF AUTHORITIES

**CASES**

*A.R. v. Dudek,*...................................................................................23
    No. 12-60460, slip op. at 14, 15 (S.D. Fla. Aug. 6, 2013)

*Anderson v. Lyng,*..............................................................................30
    652 F. Supp. 1237 (M.D. Ala. 1987)

*Atkins v. Parker,*..................................................................... 18, 26, 29
    472 U.S. 115 (1985)

*Barry v. Corrigan,*.................................................................. 16, 17, 18
    79 F. Supp. 3d 712 (E.D. Mich. 2015)

*Barry v. Corrigan,*....................................................................... 16, 17
    834 F.3d 706 (6th Cir. 2016)

*Bennett v. White,*................................................................................29
    865 F.2d 1395 (3d Cir. 1989)

*Bermudez v. United States Department of Agriculture,*.........................29
    490 F.2d 718 (D.C. Cir.)

*Bourgeois v. Peters,*.............................................................................7
    387 F.3d 1303 (11th Cir. 2004)

*Carey v. Quern,*..................................................................................25
    588 F. 2d 230 (7th Cir. 1978)

*Christian Coal. of Fla., Inc. v. United States,*.......................................6
    662 F.3d 1182 (11th Cir. 2011)

*Conley v. Gibson,*...........................................................................2, 11
    355 U.S. 41 (1957)

*Cosby v. Ward,*...................................................................................22
    843 F. 2d 967 (7th Cir. 1988)

*Cotton v. Mansour*,...........................................................................................29
    634 F. Supp. 1094 (E.D. Mich. 1986)

*County of Riverside v. McLaughlin,* ........................................................9
    500 U.S. 44 (1991)

*Daniels v. Woodbury Cnty.,* ..................................................................25
    742 F. 2d 1128 (8th Cir. 1984)

*Deposit Guar. Nat'l Bank v. Roper*,........................................................8
    445 U.S. 326 (1980)

*Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dept. of
  Health & Rehab. Servs.*,..................................................................31
    225 F.3d 1208 (11th Cir. 2000)

*Foggs v. Block*,......................................................................................28
    722 F.2d 933 (1st Cir. 1983)

*Fuentes v. Shevin*,.................................................................................24
    407 U.S. 67, 80–81 (1972)

*Gerstein v. Pugh,* ..................................................................................9
    420 U.S. 103 (1975)

*Goldberg v. Kelly*, .................................................................. 3, 18, 19, 27
    397 U.S. 254 (1970)

*Gonzalez v. Pingree*, .............................................................................21
    821 F. 2d 1526 (11th Cir. 1987)

*Gray Panthers v. Schweiker*,..................................................................19
    652 F.2d 146 (D.C. Cir. 1980)

*Haro v. Sebelius*, ..................................................................................10
    729 F.3d 993 (9th Cir. 2013)

*Holmes v. New York City Housing Authority*, .......................................25
    398 F. 2d 262 (2d Cir. 1968)

iv

*Hornsby v. Allen,* ................................................................................25
        326 F. 2d 605 (5th Cir. 1964)

*Jeffrey M. Stein, D.D.S., M.S.D., P.A. v. Buccaneers L.P.,* ...................7, 8
        772 F.3d 698 (11th Cir. 2014)

*Los Angeles Cnty. v. Davis,* ....................................................................6
        440 U.S. 625 (1979)

*Mayer v. Wing,* .....................................................................................25
        922 F. Supp. 902 (S.D.N.Y. 1996)

*Morgan Beaumont, Inc. v. First Nat'l Bank of Cent. Tex.,* ....................11
        2005 U.S. Dis. LEXIS 23123 (M.D. Fla. Jul 11, 2005)

*Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.,* .............5
        633 F.3d 1297 (11th Cir. 2011)

*Oliver v. Ledbetter,* ..............................................................................21
        821 F. 2d 1507 (11th Cir. 1987)

*Parker v. Potter,* .....................................................................................2
        232 F. App'x 861 (11th Cir. 2007)

*Patsy v. Bd. of Regents,* ..........................................................................9
        457 U.S. 496 (1982)

*Pielage v. McConnell,* ..............................................................................2
        516 F.3d 1282 (11th Cir. 2008)

*Quern v. Jordan,* ...................................................................................30
        440 U.S. 332 (1979)

*Robidoux v. Celani,* ...............................................................................10
        987 F.2d 931 (2d Cir. 1993)

*Sanders ex rel. Rayl v. Kan. Dep't of Soc. and Rehab. Servs.,* ...............32
        317 F.Supp.2d 1233 (2004)

*Sibley v. Fla. Bar,*..................................................................................................2
      No. 4:08cv219-RH/WCS, 2008 U.S. Dist. LEXIS 125244
      (N.D. Fla. Aug. 7, 2008)

*Sosna v. Iowa*,..................................................................................................9
    419 U.S. 393, 401–02 (1975)

*Summit Med. Associates, P.C. v. Pryor,* ...........................................................31
    180 F.3d 1326 (11th Cir. 1999)

*Swierkiewicz v. Sorema N.A.*,...........................................................................12
    534 U.S. 506 (2002)

*Weiland v. Palm Beach Cnty. Sheriff's Office*,.................................................12
    792 F. 3d 1313 (11th Cir. 2015)

*Wells v. Tucker,*..................................................................................................5
      No. 4:10cv441-MP/CAS, 2012 U.S. Dist. LEXIS 165658
      (N.D. Fla. Sept. 18, 2012)

*White v. Roughton*,.............................................................................................25
    530 F. 2d 750 (7th Cir. 1976)

*Whitmore v. Arkansas*, ................................................................................. 32, 33
    495 U.S. 149 (1990)

*Wilson v. Gordon*, ................................................................................. 6, 8, 10, 11
    822 F.3d 934 (6th Cir. 2016)

*Wilson v. Lyng*,..................................................................................................29
    662 F. Supp. 1391 (E.D.N.C. 1987)

*Zeidman, v. J. Ray McDermott & Co., Inc.,* ....................................................7, 8
    651 F.2d 1030 (5th Cir. 1981)

## FEDERAL STATUTES

7 U.S.C. § 2011 ..................................................................................................29

7 U.S.C. § 2013(a) ...................................................................................28

7 U.S.C. § 2015(d) ................................................................ 15, 16, 20, 26

7 U.S.C. § 2015(o) ................................................................ 15, 20, 24, 27

7 U.S.C. § 2015(o)(2)(A) ........................................................................14

7 U.S.C. § 2015(o)(3)(C) ........................................................................26

7 U.S.C. § 2019 .......................................................................................28

7 U.S.C. §§ 2020(b) and (e)(11) .............................................................30

7 U.S.C. §§ 2020(d) ................................................................................14

7 U.S.C. § 2020(e)(10) ............................................................................14

7 U.S.C. §§ 2020(o) ................................................................................14

7 U.S.C. § 2023(b) ............................................................................ 29, 30

7 U.S.C. § 2025(a) ...................................................................................28

42 U.S.C. § 1983 .......................................................................................9

## FEDERAL RULES AND REGULATIONS

7 C.F.R. § 273.7 ................................................................................ 14, 20

7 C.F.R. § 273.7(c)(2) .............................................................................27

7 C.F.R. § 273.7 (f)(3) .............................................................................21

7 C.F.R. § 273.7(b) .......................................................................... 15, 26

7 C.F.R. §§ 273.7(i) .................................................................................16

7 C.F.R. §§ 273.7(f)(1)(ii) ................................................................... 16, 17

7 C.F.R. § 273.13(a)(2) ...................................................................... 14, 17

7 C.F.R. § 273.15(a) .................................................................................22

7 C.F.R. § 273.17 .....................................................................................28

7 C.F.R. § 273.17(a)(1) ............................................................................30

7 C.F.R. § 273.24 ............................................................................... 14, 15

7 C.F.R. § 273.24(a)–(c) ..........................................................................21

7 C.F.R. § 273.24(c) ........................................................................... 20, 26

7 C.F.R. §§ 273.24(b)(2) ..................................................................... 16, 20

7 C.F.R. § 277.1(b) ..................................................................................28

7 C.F.R. § 277.4 .......................................................................................28

## MISCELLANEOUS

5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 23.64, at (1)(b) ......10

Dep't of Ed. Opportunity, 42 F.A.L.R. 3998
(Fla. Dep't of Ed. Opportunity 2016),
https://www.flrules.org/gateway/ruleNo.asp?id=73B-5.001 ...................................23

Fla. Admin. Code R. 65A-1.605(3)(a)–(c) .............................................................21

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

_____

CHRISTOPHER MO., KIMBERLY MO.,
MICHAEL WR., AND VIRGINIA WR. as next
friend of MICHAEL WR., individually and on
behalf of others similarly situated,

        Plaintiffs,

v.

MIKE CARROLL, in his official Capacity
as Secretary of Florida's Department of
Children and Families.

        Defendant.

_____

Case No.: 4:16cv780-RH/CAS

**PLAINTIFFS'
MEMORANDUM OF LAW
IN OPPOSITION TO
DEFENDANT'S
MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs submit this memorandum of law in Opposition to Defendant's

Motion to Dismiss Complaint and Incorporated Memorandum of Law ("Def.

Mot."). For the reasons below, Defendant fails to show that, based on the facts

stated in the Complaint, Plaintiffs do not state a cause of action.

## STANDARD OF REVIEW

The standard of review in a motion to dismiss pursuant to Federal Rules of

Civil Procedure 12(b)(6) is clear. The court must "take the factual allegations in

the complaint as true and construe them in the light most favorable to the plaintiff."

1

*Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted); *see also Sibley v. Fla. Bar*, No. 4:08cv219-RH/WCS, 2008 U.S. Dist. LEXIS 125244, at *5 (N.D. Fla. Aug. 7, 2008). The court may only grant a Rule 12(b)(6) motion to dismiss "where it is demonstrated 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Parker v. Potter*, 232 F. App'x 861, 863 (11th Cir. 2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

## I.     PLAINTIFFS' PUTATIVE CLASS ACTION IS NOT MOOT.

The crux of Defendant's Motion to Dismiss continues to be based inaccurately on the supposed mootness of the named Plaintiffs' claims. Def. Mot., Point I.  Defendant elevates the efforts of counsel for both parties to provide named Plaintiffs timely access to SNAP, thereby avoiding having to seek a temporary restraining order, to a defense based on mootness. As with his opposition to Plaintiffs' motions for preliminary injunction and class certification, Dkt. 39, 48, Defendant relies on generic Article III pronouncements to support dismissal of the named Plaintiffs' claims, again skirting the longstanding "relation back" doctrine that preserves Plaintiffs' action for resolution of the claims of the entire putative class. This Court should reject Defendant's attempt to predicate his argument upon his agreement to restore SNAP benefits to the individual named Plaintiffs.

## A.    The Claims of the Named Plaintiffs Are Not Moot.

The named Plaintiffs represent a putative class of individuals all suffering the loss of SNAP benefits due to alleged noncompliance with ABAWD work rules. After commencement of this action, Plaintiffs' counsel sought to remedy the irreparable harm being suffered by the named Plaintiffs through seeking the cooperation of Defendant's counsel, to avoid having to seek a temporary restraining order to immediately restore their subsistence benefits:

> Although we have not asked for a temporary restraining order, we reserve the right to seek immediate relief from the Court, including a temporary restraining order, unless DCF conducts individualized determinations of eligibility for each of the named plaintiffs . . . and, if eligible, reinstates plaintiffs and provide benefits….

Tasheff Decl., Ex. A, Dkt. 44-2 (Dec. 30, 2016 Email of Cindy Huddleston to William Stafford). The landmark Supreme Court ruling in *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970) observed:

> For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care. Thus the crucial factor in this context . . . is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy.

*Id*. at 264 (emphasis in original) (footnotes and citation omitted).

In addition, as Defendant himself notes, named Plaintiff Michael WR.'s claims are in fact not moot since Defendant only partially restored his lost SNAP benefits.[1] *See* Def. Mot. 6, n.3 ("Plaintiffs' claim for restoration of benefits is also *largely* moot.") (emphasis supplied). Michael WR. received notice that his SNAP benefits would end March 31, 2016. Compl. ¶ 119. Two days after his November 2016 reapplication, he received a notice denying his application for noncompliance with work requirements. *Id.* ¶ 121. In response to the filing of this lawsuit, DCF determined him eligible for SNAP benefits, only as of November 14, 2016. Def. PI MOL, 16. Defendant has not fully addressed Michael WR.'s claims for restoration of benefits. Thus, his individual claim is not moot.

## B.   The Voluntary Cessation Exception to Mootness Also Preserves the Named Plaintiffs' Claims.

Defendant acknowledges the well-established "voluntary cessation" exception to mootness, Def. Mot. 4, urging the Court to grant him "considerably more leeway" as a governmental official, *id*. at 4, and to rule that his alleged cessation of ABAWD policies challenged in this action effectively moots the named Plaintiffs' claims. *Id*. at 5.

---

[1] As to Kimberly MO. and Christopher MO, Defendant has mailed a Notice of Case Action dated March 13, 2017, reinstating benefits from July 2016 to December 2016.  Thus, Defendant has restored all their benefits which he previously terminated erroneously.

Defendant's argument presents a *non sequitur*. His restoration of benefits to the three individual Plaintiffs was not accompanied by any systemic policy change to address Plaintiffs' legal claims. For example, Defendant incrementally restored benefits to Kimberly and Christopher MO. in response to the filing of this action, only after DCF "determined that best practices should have prompted an inquiry" into their prior ABAWD exempt status. Dkt. 39, at 14. Defendant offers no assurance that this reassessment of "best practices" has led to or will result in any modification of policies, notices, or practices related to ABAWD implementation for either the named Plaintiffs or absent class members. Consequently, Defendant's action did not represent a "voluntary cessation" of any actual action beyond the partial restoration of wrongfully-withheld benefits to three individuals who have legal counsel.

This Court has specified three critical factors underlying use of the voluntary cessation exception for governmental actors:

> To determine the mootness inquiry in a case involving governmental conduct, three factors are analyzed: (1) whether cessation of the challenged action was "unambiguous;" (2) whether the cessation or change in government policy was the product of "substantial deliberation" or just an attempt to manipulate jurisdiction; and (3) whether a new policy has been "consistently applied" or a new course of conduct has been adhered to after voluntary cessation.

*Wells v. Tucker*, No. 4:10cv441-MP/CAS, 2012 U.S. Dist. LEXIS 165658, at *11 (N.D. Fla. Sept. 18, 2012) (citing *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents*

5

*of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1309 (11th Cir. 2011)). Defendant's action here fails the test.

Defendant's restoration of benefits inured only to the named Plaintiffs. It was not part of an unambiguous, consistent application of policy affecting individuals who allegedly must comply with ABAWD work requirements. When a defendant "abandons a challenged practice voluntarily," he bears a "heavy burden" to demonstrate mootness, *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1196 (11th Cir. 2011), by demonstrating that "'there is no reasonable expectation'" of recurrence of the violation and "interim relief or events have completely and irrevocably eradicated the effects'" of the violation. *Id*. (quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (further citation omitted)). Defendant has not met this heavy burden.

The Sixth Circuit addressed an analogous situation in a class action challenge to Medicaid application delays in *Wilson v. Gordon*, 822 F.3d 934 (6th Cir. 2016). Plaintiffs there jointly agreed with the State to specially process the applications of the named plaintiffs and up to 100 additionally identified applications, which resulted in plaintiffs' individual claims becoming moot. The court held that this did not moot the action, since the "plain terms of the Joint Motion did not settle the case." *Id*. at 943. Similarly, this action is not moot.

6

### C.     The "Relation Back" Doctrine Preserves Plaintiffs' Action for Resolution of Class Members' Claims.

Even assuming that the named Plaintiffs' claims are moot, the merits of this putative class action are preserved under the longstanding "relation back" doctrine, which allows class certification to "relate back" to the filing of the complaint, since the named Plaintiffs have diligently sought class certification and their inherently transitory claims became arguably moot before this Court could act their motion. *See Jeffrey M. Stein, D.D.S., M.S.D., P.A. v. Buccaneers L.P.*, 772 F.3d 698, 705–07 (11th Cir. 2014); *Zeidman, v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1045 (5th Cir. 1981) (the "general rule" dictating dismissal for mootness "must yield when the district court is unable reasonably to rule on a motion for class certification before the individual claims of the named plaintiffs become moot").

Instead of directly acknowledging the relation back doctrine, Defendant contends that the named Plaintiffs' claims are not transitory, since they could have requested administrative fair hearings regarding their SNAP benefits prior to filing suit. As a result, their claims purportedly do not qualify under the "capable of repetition, yet evading review" exception to mootness. Def. Mot. 7–8. This argument misconceives the nature of the relation back doctrine in two respects.

First, Plaintiffs are not arguing that the claims of the named class representatives are now individually capable of repetition, yet evading review, as viewed in isolation from the claims of absent class members. *Compare Bourgeois*

7

*v. Peters*, 387 F.3d 1303, 1308 (11th Cir. 2004). Plaintiffs are not arguing for the

application of this mootness exception to each named plaintiff in isolation.

Application of the relation back doctrine evaluates the post-filing, transitory nature

of the claims of named plaintiffs who seek to represent a putative class, in order to

assess whether the claims of the class relate back to the filing of the complaint and

are thereby preserved. *See Wilson*, 822 F.3d at 946–51 (court separately analyzed

relation back doctrine and capable of repetition, yet evading review exception to

mootness, where named plaintiff claims were mooted prior to class certification).

Indeed, Defendant's argument here would allow him to "pick off" Plaintiffs

or intervenors while insulating his practices from review.  Courts have recognized

a "picking off" exception to mootness prior to class certification:

> Requiring multiple plaintiffs to bring separate actions, which effectively
> could be 'picked off' by a defendant's tender of judgment before an
> affirmative ruling on class certification could be obtained, obviously would
> frustrate the objectives of class actions [and] . . . would invite waste of
> judicial resources….

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).  "By tendering to

the named plaintiffs the full amount of their personal claims each time suit is

brought as a class action, the defendants can in each successive case moot the

named plaintiffs' claims before a decision on certification is reached." *Zeidman,*

651 F.2d at 1050; *accord, Stein,* 772 F.3d at 704–05; *see also, Wilson,*  822 F.3d at

950–51 ("picking off" mootness exception applied where State created ad hoc

8

process to determine individual claims did not address class-wide remedy to rectify Medicaid delays).

Second, Defendant's attempt to characterize the pre-filing status of the named Plaintiffs' claims as not transitory, because they did not seek state administrative fair hearing review, ignores clear precedent holding that Plaintiffs had no obligation to exhaust state administrative remedies prior to filing suit under 42 U.S.C. § 1983. *Patsy v. Bd. of Regents*, 457 U.S. 496 (1982). Further, the relation back rule applies the analysis of mootness of named plaintiff claims as they occur after the commencement of the action and before the court can reasonably decide class certification.

Plaintiffs had live claims upon filing this action and diligently pursued class certification. Defendant issued inadequate sanction notices to the named Plaintiffs for allegedly failing to comply with ABAWD work requirements and shortly thereafter terminated their SNAP benefits.  Not surprisingly, immediately after the filing of this suit, Defendant's reinstated named Plaintiffs' SNAP benefits in an effort to moot their claims.  The Court could not reasonably be expected to rule on class certification prior to the expiration of these transitory events. Similar to the transitory nature of the claims of the individual challengers in *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (pre-trial detention); *Sosna v. Iowa*, 419 U.S. 393, 401–02 (1975) (state divorce residency requirement); and *Gerstein v.*

9

*Pugh*, 420 U.S. 103, 110 n.11 (1975) (pre-trial detention), here the named Plaintiffs' claims  "are so inherently transitory that the trial court will not have time to rule on a motion for class certification before the named plaintiff's individual interest expires." 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 23.64, at (1)(b).

In *Wilson v. Gordon,* the Sixth Circuit applied the relation back rule in a challenge to Medicaid application processing delays.  The state defendant argued that "the claim must naturally expire in a short amount of time," in order to invoke the doctrine. 822 F.3d at 945. In ruling for plaintiffs, the *Wilson* court held that "the uncertainty about how long an injury caused by ongoing conduct will persist can also render a claim inherently transitory." *Id*.

The *Wilson* court found further support from the Second Circuit's decision in *Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993), ruling that the named plaintiffs' pre-certification receipt of public benefits did not moot class members' claims challenging processing delays. As the Sixth Circuit observed, the *Robidoux* court concluded that "'[a]ppellants' claims are inherently transitory since the Department will almost always be able to process a delayed application before a plaintiff can obtain relief through litigation.' The court did not consider average delays in processing those applications." *Wilson*, 822 F.3d at 946 (quoting *Robidoux*, 987 F.2d at 939); *see also*, *Haro v. Sebelius*, 729 F.3d 993, 1003 (9th

10

Cir. 2013) (reimbursement of plaintiff's Medicare claim did not moot class injunctive claims).

Here, Defendant determined that each named Plaintiff as well as all putative class members are subject to ABAWD work requirements and, as a result of their alleged non-exempt status, sent or will send them notices of sanction.  Defendant's actions against the putative class began over one year ago and continue today. After commencement of suit, Defendant promptly at least partially restored benefits to each named Plaintiff.  He now moves to dismiss their claims as moot before the Court could reasonably be expected to rule on class certification. In the interim, it is "certain other class members are suffering the injury" alleged by Plaintiffs.  *Wilson*, 822 F.3d at 945 (citation omitted). The relation back doctrine preserves the claims of the putative class members.

## II.     PLAINTIFFS' COMPLAINT PROVIDES FAIR NOTICE OF PLAINTIFFS' CLAIMS.

Plaintiff's Complaint, Dkt.1, is not ambiguous and confusing, nor should Plaintiffs be required to amend the Complaint. Defendant's summary argument to the contrary is completely without merit. Rule 8(a) requires only a short and plain statement to set forth a claim. *See Morgan Beaumont, Inc. v. First Nat'l Bank of Cent. Tex.*, 2005 U.S. Dis. LEXI 23123, *12 (M.D. Fla. Jul 11, 2005); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957). Plaintiff need only plead enough facts to give the defendant fair notice of "what the plaintiff's claim is and the grounds upon

11

which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). A dismissal under Rules 8(a) and 10(b) is only appropriate where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F. 3d 1313, 1325 (11th Cir. 2015). Likewise, dismissal is inappropriate where the complaint gives fair notice of the claims and permits a court to readily determine if plaintiffs state a claim upon which relief can be granted. *Id.* at 1326.

The Complaint clearly sets out the relevant facts, statutory and regulatory scheme, and three discrete claims for relief challenging Defendant's failure to provide: 1) adequate Notice of Case Action ("NOCA", also referred to as the sanction notice); 2) an adequate ABAWD status determination notice; and 3) a fair process for making the ABAWD determination, Dkt. 1, ¶¶ 123–125. Defendant's response to Plaintiffs' Motion for Preliminary Injunction, Dkt. 9, his brief in support of his Motion to Dismiss, Dkt. 63, and presentation at the February 24, 2017 Preliminary Injunction hearing make abundantly clear that Defendant has fair notice of the claims against him. His argument to the contrary seeks to manufacture confusion where none exists.

### III.   DEFENDANT'S INADEQUATE NOTICE OF CASE ACTION ("NOCA") IMPOSING A SANCTION VIOLATES THE SNAP ACT, ITS IMPLEMENTING REGULATIONS, AND DUE PROCESS.

Plaintiffs' First Claim, Compl., ¶123, challenges Defendant's Notice of Case Action ("NOCA") imposing a sanction for failure to comply with work requirements as contrary to both federal SNAP law and the Due Process Clause. Plaintiffs have demonstrated that the boilerplate NOCA violates the rigorous standards for adequate notice of adverse action mandated by SNAP law and Due Process. *See* Pls' Initial and Reply PI MOL and supporting decls. and exs. Dkt. 4-1 at 25–33; Dkt. 4-8 at ¶8; Dkt. 4-10 at ¶ 10; Dkt. 4-6; Dkt. 4-9; Dkt. 4-12; Dkt. 43 at 2–4. Defendant's summary argument in support of his Motion to Dismiss, Def. Mot., Point II, repeats his earlier conclusory arguments and utterly fails to rebut Plaintiffs' arguments, supported by extensive case law, establishing that the NOCA violates both SNAP law and Due Process. Plaintiffs' First Claims states a valid cause of action, and Defendant's Motion to Dismiss should be denied.

The challenged NOCA provides in relevant part:

> "You did not complete the work requirements for the food assistance program – first non-compliance" and "the head of your Food Assistance household, or a household member, did not complete a work requirement without having a good reason. If you comply before the begin date of the penalty, we will not impose the penalty. To comply with the …work requirements, contact the Career Source …. If you have a good reason for not complying with work requirements and can give us proof of the reason, contact DCF at . . . ."

13

*See* Dkt. 4-6.

### A.  Defendant Fails to Establish that the NOCA Complies with the Requirements of the SNAP Act and Implementing Regulations.

The NOCA violates the federal SNAP Act and implementing regulations in critical respects. First, its boilerplate reason ("did not complete a work requirement without having a good reason") fails to state in plain and "easily understandable language" the *specific* act of alleged non-compliance. 7 U.S.C. § 2020(e)(10) and 7 C.F.R. § 273.13(a)(2); 7 U.S.C. §§ 2020(d) and (o) as implemented by 7 C.F.R. § 273.7 and subsection (f)(1)(ii) (requiring the notice to contain "the *particular* act of noncompliance") (emphasis added) and § 273.24.

This generic language does not inform the recipient of the exact act or omission that is resulting in the sanction. The NOCA omits specific information that would inform the recipient whether Defendant believes he failed to "register for employment, [to] participate in [E & T], or [to] accept an offer of employment" and the specifics, such as whether Defendant claims the individual failed to participate in a specific activity on a certain date. Nor does the NOCA advise the recipient whether Defendant believes he failed to work 80 hours per month as required by the ABAWD work rules. 7 U.S.C. § 2015(o)(2)(A).

Plaintiff Kimberly MO. reported to Defendant that she works 100 hours a month on average and therefore she should not have been subject to ABAWD work rules. Kimberly MO. Decl., Dkt. 4-10, ¶ 4; Ex. 1. Yet, Defendant's NOCA to

14

her simply states "[y]ou did not complete the work requirements" without identifying the nature of her purported failure. The NOCA forces the recipient to conjecture as to when and how she purportedly failed to comply—E & T, ABAWD, or both— rendering it impossible for her to know what she allegedly did wrong and how she might either rebut or cure the purported violation, undermining the recipient's ability to effectively exercise her fair hearing rights.

Second, the NOCA advises the recipient that following the sanction period, she can regain eligibility by complying or becoming exempt, but this generic explanation does not specifically alert the individual that, if she has a current claim for exemption, she can avoid the sanction. And, contrary to 7 U.S.C. § 2015(d)(2) and (o) and 7 C.F.R. § 273.7(b), and §273.24, the notice fails to identify *any* of the statutory exemptions, such as physical or mental unfitness for employment, how to qualify for them, and how they can be claimed. This failure deprives recipients of critical information they can use to challenge or avoid the sanction. Had the NOCA delineated applicable exemptions, Michael WR. and Christopher MO., both of whom have mental or physical impairments that make them unfit for work, could have asserted the applicable exemption under the ABAWD or E & T rules and avoided sanction. Michael WR. Decl., Dkt. 4-3, ¶ 3; Christopher MO. Decl., Dkt. 4-8, ¶ 4.

15

Third, the NOCA fails to explain what constitutes "good cause" for non-compliance as required by 7 U.S.C. § 2015(d) and (o) and 7 C.F.R. §§ 273.7(i), 273.24(b)(2).

Fourth, the NOCA's generic statement that the recipient can comply and avoid sanction, contrary to 7 C.F.R. § 273.7(f)(1)(ii), utterly fails to inform the recipient of the "action [he] can take to avoid the disqualification." Section § 273.7(f)(1)(ii) unequivocally requires that the recipient be afforded an opportunity to cure any alleged noncompliance before his SNAP benefits may be terminated.

A boiler plate, nonspecific notice of sanction that fails to "explain the reasons for denial or termination [of food assistance and] what recipients must do to lift disqualification" violates the federal SNAP Act, its implementing regulations and Due Process. *See*, *Barry v. Corrigan*, 79 F. Supp. 3d 712, 744–45 (E.D. Mich. 2015), *aff'd, Barry v. Corrigan*, 834 F.3d 706 (6th Cir. 2016).

*Barry* directly applies here. Plaintiffs in *Barry* challenged Michigan's similarly generic notices terminating SNAP "due to a criminal justice disqualification" and instructing the recipient to contact law enforcement to resolve. The District Court, in a thorough analysis of the extensive case law involving challenges to public benefit notices, held the notice violated SNAP law and Due Process. The Court enjoined Defendant from terminating SNAP without providing detailed notice of the factual and legal basis for the action, including the

16

specific type of criminal justice disqualification, the name of the person disqualified, specific information regarding the warrant (e.g. warrant number), the jurisdiction where the warrant was issued, the name of someone with knowledge of the matter who could provide additional information, and the specific acts the person could take to resolve the disqualification. *Barry*, 79 F. Supp. 3d at 741–46, 752–53, *aff'd*, 834 F.3d 706 (6th Cir. 2016). Here, as in *Barry*, Defendant's NOCA fails to provide specific, individualized information about: the precise nature of the individual's alleged failure to comply; how to avoid the sanction, how to qualify for exemptions; what constitutes good cause; and the specific action the recipient can take to cure any noncompliance and avoid sanction.

Defendant does not seriously dispute the inadequacy of his NOCA. His conclusory argument is nothing more than his repeated summary assertion that the NOCA, with its boilerplate description of the reason for sanction, complies with 7 C.F.R. § 273.13(a)(2). He devotes almost 2 pages to repeating a table that cross references sections of the NOCA to selected elements of § 273.13(a)(2), including notice elements not in contention, without refuting any of the NOCA's critical deficiencies, acknowledging that 7 C.F.R. § 273.7(f)(1)(ii) specifically requires that adverse action notice for failure to comply with work requirements contain "the *particular* act of noncompliance (emphasis added), or addressing relevant case law.

17

### B.   Defendant Fails to Establish that the NOCA Complies with Due Process.

Defendant's NOCA violates Due Process for the same reasons that it violates the SNAP statute and implementing regulations. Plaintiffs have already established and Defendant has not argued to the contrary in his Motion to Dismiss, that plaintiffs have a property interest in SNAP. *Atkins v. Parker,* 472 U.S. 115, 128 (1985).  Defendant likewise offers no serious defense of his NOCA's constitutional inadequacy. Defendant's summary three-sentence assertion that the NOCA complies with Due Process for the same reasons it complies with SNAP law, Def. Mot. 12–13, ignores the extensive case law holding boilerplate public benefits adverse action notices constitutionally inadequate. Indeed, the analysis of the adequacy of an adverse action notice under Due Process and governing SNAP law is the same. *See, e.g. Barry, supra*, 79 F. Supp. 3d at 745. Numerous courts, in addition to the 6th Circuit in *Barry*, have held that boilerplate, non-specific explanations of the reasons for termination or reduction of public benefits violate Due Process. *See, e.g. Barry*, at 743–744 (citing cases), Pls. PI MOL, Dkt. 4-1 at 31–33 (citing cases).

The value of adequate pre-termination notice is indisputable. *Goldberg v. Kelly*, *supra*, makes clear that public assistance recipients are entitled to adequate notice which must "detail the reasons for the proposed" action, so the recipient can determine whether the intended action "rests on incorrect or misleading factual

premises or on misapplications of rules or policies to the facts of the particular

case." *Goldberg*, 397 U.S. at 267–68. Without inclusion of the "specific reasons . .

. a claimant is reduced to guessing what evidence can or should be submitted in

response and driven to responding to every possible argument . . . at the risk of

missing the critical one altogether." *Gray Panthers v. Schweiker*, 652 F.2d 146,

168–69 (D.C. Cir. 1980).

Here, had Defendant issued a constitutionally adequate NOCA, Plaintiffs

would have had the information necessary to understand the predicate facts and

reasons for Defendant's decision to sanction their food assistance as well as critical

information about possible exemptions and good cause, thus enabling them to

meaningfully exercise their fair hearing right. *See Goldberg,* 397 U.S. at 267–268.

## IV.   THE DEPARTMENT OF ECONOMIC OPPORTUNITY'S UNADOPTED REVISED NOTICE OF MANDATORY PARTICIPATION DOES NOT MOOT PLAINTIFFS' CLAIMS.

Defendant argues that Plaintiffs' second claim, which alleges that DCF fails

to provide adequate notice about, *inter alia,* E&T and ABAWD work requirement

and time limit determinations, is moot and should be dismissed for failure to state a

cause of action. In support, Defendant contends that the Department of Economic

Opportunity's ("DEO") February 1, 2017, Notice of Mandatory Participation

("revised NOMP") is adequate. However, for the reasons discussed below,

Defendant is incorrect. The revised NOMP does not moot Plaintiffs' second claim and does not justify dismissal of that claim for failure to state a cause of action.

First, the revised NOMP continues to be deficient. While the revised NOMP informs recipients that they are subject to *SNAP E&T,* it does not inform them of DCF's determination that they are *time-limited* as an *ABAWD,* the basis for DCF's ABAWD decision, the good cause exception to the work requirement, and hearing rights regarding the ABAWD determination. It also omits critical information about DCF policy — that a person working 20–29 hours a week is meeting work requirements and not subject to referral to E & T and that people with pending Supplemental Security applications (not just SSI recipients) are obviously unfit for employment and meet an ABAWD exception. Dkt. 4-2. *See* Pls. PI Reply MOL at 9-10. These are major failures. SNAP E&T obligations and SNAP ABAWD time limits, exceptions, and work requirements are different mandates governed by separate statutes and regulations. *Compare* 7 U.S.C. § 2015(d) and 7 C.F.R. § 273.7 (work requirements for SNAP E&T) *with* 7 U.S.C. § 2015(o) and 7 C.F.R. § 273.24(b), (c) (time limits for able-bodied adults who are not working). Under this bifurcated statutory and regulatory scheme, time-limited ABAWDS cannot receive SNAP for more than 3 months in a 3-year period unless they comply with a very specifically defined work requirements, including workfare, work (paid, in

exchange for goods or services, or volunteer work) or participation in a work

program, for at least 80 hours per month. 7 C.F.R. § 273.24(a)–(c).

In contrast, SNAP E&T requires participants to comply with assigned E&T

activities or face immediate loss of benefits for 1 to 6 months as a sanction if they

do not have good cause ("sanctions"). 7 C.F.R. § 273.7(f)(3); Fla. Admin. Code R.

65A-1.605(3)(a)–(c).  Even though recipients may be able to satisfy both ABAWD

and SNAP E&T work requirements concurrently, SNAP E&T and ABAWD work

requirements and time limits are not one and the same.[2]

Nor is Defendant correct that Plaintiffs fail to allege deprivation of a

constitutionally protected interest or that a Notice of Case Action will give them

adequate redress. Motion to Dismiss at 17. To the contrary, every claim that

Plaintiffs make is expressly premised, in part, on the Due Process Clause.[3] DCF's

determination that a SNAP recipient is a time-limited ABAWD is action that in

and of itself affects the recipient's participation in SNAP at the moment the

---

[2] *See also* FNS, *Supplemental Nutrition Assistance Program - ABAWD Time Limit Policy and Program Access* (Nov. 19, 2015) at 2 (noting that SNAP ABAWD and SNAP E&T are not the same thing, although states have the "flexibility to design E&T programs that…also meet[] the ABAWD work requirement."). Dkt. 4-2 at 2 Ex. 4.

[3] SNAP benefits are a form of property protected by the Due Process Clause of the Constitution, s*ee Oliver v. Ledbetter*, 821 F. 2d 1507, 1515 (11th Cir. 1987); *cf. Gonzalez v. Pingree*, 821 F. 2d 1526, 1528 (11th Cir. 1987).

determination is made, and thus is an action as to which an aggrieved individual may request a fair hearing. 7 C.F.R. § 273.15(a).[4] If Defendant does not provide notice of this determination when DCF makes it, many SNAP recipients will discover that they have exhausted their three months of assistance only when, down the road, they receive a Notice of Case Action sanctioning them. Such notice is "too little, too late" and contrary to Due Process. Plaintiffs have a right to adequate notice of DCF's ABAWD determination when the hourglass is turned over, not after the sand has already run out. With an adequate notice of this status decision at the relevant time, the recipient can protect her rights and seek a fair hearing or an exemption before she is caught up in DEO's E &T system, exposed to possible sanctions, and uses up her three-months of benefits. *See*, *Cosby v. Ward*, 843 F. 2d 967 (7th Cir. 1988), discussed in Pls. PI Reply MOL at 7–8.

In sum, Plaintiffs' statutory and Due Process claim, Compl. ¶ 124, is based on the theory that, for DCF to administer the ABAWD and E & T statutory requirements correctly and assure that eligible individuals receive SNAP without being unlawfully subject to ABAWD and E & T requirements, DCF must provide

---

[4] ABAWD time limits are not imposed by default on SNAP recipients in Florida. Recipients are not subject to either time limits on their receipt of SNAP or ABAWD work requirements until DCF determines that the recipient is non-exempt. That determination is supposed to be made only after a methodical and comprehensive assessment.  Dkt. 4-2 at 2, Ex. 4.

an adequate ABAWD status determination notice at the relevant time, that is, when DCF first determines an individual subject to ABAWD.

Second, even if the revised NOMP did cure all inadequacies identified by Plaintiffs in their second claim, the revised NOMP is not grounds for dismissal. For one thing, the revised NOMP has not been finalized through rulemaking. Dep't of Ed. Opportunity, 42 F.A.L.R. 3998 (Fla. Dep't of Ed. Opportunity 2016), https://www.flrules.org/gateway/ruleNo.asp?id=73B-5.001.  Until rulemaking is complete, the revised Form is subject to modification. *A.R. v. Dudek*, No. 12-60460, slip op. at 14, 15 (S.D. Fla. Aug. 6, 2013). As the *A.R.* court explains: "[P]roposed rules …remain subject to modification, despite Defendants' claim that they have made statewide changes that have already been implemented in these areas…Accordingly, the proposed rule changes …do not moot Plaintiffs' claims…[T]here is no way at this time to know whether the rules, as proposed… will become final…"

Further, neither named Plaintiffs nor any of the hundreds of thousands of putative class members sanctioned *before* February 1, 2017, received the revised NOMP. The Notice of Mandatory Participation that *they* received does not list SNAP E&T exemptions and exceptions or advise them to contact DCF if they believe they meet an exemption or exception, much less contain the ABAWD determination information that Plaintiffs contend is required.

23

Plaintiffs' Second Claim states a valid cause of action, and Defendant's

Motion to Dismiss should be denied.

## V.     DEFENDANT'S SANCTIONING OF PLAINTIFFS' CLASS SNAP BENEFITS WITHOUT A FAIR PROCESS FOR MAKING INDIVIDUALIZED ABAWD STATUS DETERMINATIONS VIOLATES THE SNAP ACT, IMPLEMENTING REGULATIONS, AND DUE PROCESS.

Plaintiffs' Third Claim, Compl. ¶ 125, challenges, as contrary to 7 U.S.C. §

2015(o) and Due Process, Defendant's policies and practices of sanctioning

Plaintiffs and the putative class without having a fair process for making

individualized determinations of each class member's status as an ABAWD. Such

a process would ensure that only those who are properly subject to ABAWD and E

& T rules have such rules applied to them. The heart of this claim is that

Defendant, perhaps in his rush to implement these complicated new requirements,

has an arbitrary and fundamentally unfair process that incorrectly subjects

numerous individuals to the ABAWD and E & T rules and sanctions.

A claim for fair ABAWD status determination clearly implicates Due

Process. *See, Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972) ("the duty of

government to follow a fair process of decision making when it acts to deprive a

person of his [property interest]" is a fundamental aspect of due process… "It has

long been recognized that 'fairness can rarely be obtained by secret, one-sided

determination of facts decisive of right'") (internal citation omitted).

It is also well settled that in the context of eligibility for welfare assistance, "due process requires at least that the assistance program be administered in such a way as to ensure fairness and to avoid the risk of arbitrary decision-making." *See White v. Roughton*, 530 F. 2d 750, 753 (7th Cir. 1976); *Holmes v. New York City Housing Authority*, 398 F. 2d 262, 265 (2d Cir. 1968); *Carey v. Quern*, 588 F. 2d 230, 232 (7th Cir. 1978). Application of this cardinal principle requires that program administrators assure "the fair and consistent application of eligibility requirements" to avoid arbitrary denials of benefits. *White*, 530 F. 2d at 753–54; *see also Daniels v. Woodbury Cnty.*, 742 F. 2d 1128, 1135 (8th Cir. 1984); *see also Hornsby v. Allen,* 326 F. 2d 605 (5th Cir. 1964) (due process required in liquor license application process). The fact that recipients ultimately have a right to a hearing to challenge a sanction does not cure the fundamental unfairness of defendant's process for determining ABAWD status:

> The administrative appeal process is not a substitute for proper prior procedures at the agency level. Whatever its value in individual cases, the administrative appeal process may not regularly be used as a vehicle to conduct a requisite inquiry which the agency continually fails to institute.

*Mayer v. Wing*, 922 F. Supp. 902, 912 (S.D.N.Y. 1996).

The named Plaintiffs' experience illustrates the flaws in Defendant's process. Defendant incorrectly deemed Christopher MO and Michael WR—both of whom have disabilities—ABAWDs subject to mandatory E & T work

25

requirements and sanctioned their SNAP benefits without first individually

assessing them to determine whether they were in fact physically or mentally unfit

for work in clear contravention of 7 U.S.C. § 2015(d), (o)(3)(C); 7 C.F.R. §

273.7(b), § 273.24(c), and an explicit federal agency directive, Dkt. 4-2, Ex. 4, 1–

2; Dkt. 1, ¶¶ 99-100, 103, 117, 119–121. Similarly, Kimberly MO reported her

work hours (*Id*., ¶ 112), yet Defendant failed to provide a discernable process for

finding her either compliant or exempt.

While Defendant's flawed implementation process in January 2016 involved

a rough attempt to identify potentially exempt individuals from among then current

recipients based on earlier information in its database, Dkt. 39 at 11, as Plaintiffs

allege, Dkt. 1, ¶¶ 67–79, Defendant had no coherent process for seeking or

obtaining updated or relevant *current* information from individuals that would

allow an accurate determination of their ABAWD status. Unfortunately, but not

surprisingly, in the early months following implementation, hundreds of thousands

were sanctioned.  Dkt. 4-2, Ex. 7.

Defendant fundamentally misunderstands Plaintiffs' claim. First, Defendant

is wrong when he contends that his ABAWD status determination does not

implicate a constitutionally protected interest. Dkt. 63 at 19. Defendant's

sanctioning of Plaintiffs and the putative class' receipt of SNAP—a

constitutionally protected property interest, *Atkins v. Parker*, 472 U.S. 115, 128

(1985)—predicated on his erroneous determination of their ABAWD status

without a constitutionally compliant fair process, is elementally a Due Process

violation. *Goldberg v. Kelly*, 397 U.S. at 262-263 ("[r]elevant constitutional

restraints apply … to the withdrawal of public assistance … and the due process

[that] must be afforded the recipient is influenced by the extent to which he may be

condemned to suffer grievous loss, … and whether the … interest in avoiding that

loss outweighs the governmental interest in summary adjudication").

Moreover, Defendant's suggestion that Plaintiffs seek that Defendant follow

a specific process, Dkt. 63 at 18, misses the mark. Plaintiffs do not seek a specific

process. To the contrary, Plaintiffs simply assert that Due Process and adherence to

7 U.S.C. 2015(o) demand that Defendant have a *fair* process to determine who is

an ABAWD, including appropriately screening for statutorily mandated

exemptions and exceptions so that only those recipients properly subject to

ABAWD rules and E &T work requirements are sanctioned if they are

noncompliant.  Defendant's acknowledgement that the E &T regulation 7 C.F.R. §

273.7(c)(2) compels him to "screen each work registration to determine whether or

not it is appropriate, based on the State agency's [ascertainable] criteria," Dkt. 63

at 18, inherently contradicts his argument that neither Due Process nor 2015(o)

require a fair process for determining ABAWD status.

27

Plaintiffs' Third Claim states a valid cause of action, and Defendant's motion to dismiss the claim should be denied.

## VI.   THE ELEVENTH AMENDMENT DOES NOT PRECLUDE AN AWARD OF RELIEF IN THIS ACTION.

Defendant mischaracterizes the relief Plaintiffs seek. Def. Mem. 19-20. Plaintiffs seek only prospective relief enjoining Defendant to comply with so much of federal law as requires him to restore lost *federal* benefits when those benefits were lost due to an error by Defendant. Compl., Wherefore Clause, D(4). Plaintiffs seek no payments of state benefits since SNAP benefits are 100% federally funded and the costs of administration are 50% funded. 7 U.S.C. §§ 2013(a), 2019, 2025(a); 7 C.F.R. §§ 277.1(b), 277.4.

Defendant does not dispute that federal law imposes on Defendant a duty to correct underpayments and restore assistance of federal food stamp benefits. Def. Mem. fn. 9 (citing 7 C.F.R. § 273.17). Rather, he mistakenly suggests that ordering that relief runs afoul of the Eleventh Amendment. It does not.

In *Foggs v. Block*, the First Circuit found that the Eleventh Amendment does not bar a federal court from ordering the restoration of food stamp benefits. 722

28

F.2d 933, 941 n. 6 (1st Cir. 1983), *rev'd on other grounds sub nom. Atkins v.*

*Parker*, 472 U.S. 115 (1983).[1]

> The state defendant argues that the district court's order requiring the restoration of benefits violates the Eleventh Amendment's prohibition on the recovery of money damages from the states. Since the cost of the food stamp program is borne by the federal government, we see no Eleventh Amendment bar to ordering the restoration of benefits. The state may incur some administrative costs, if it has to restore benefits, but these should be *de minimis*.

722 F.2d at 941 n. 6. *See also Bennett v. White,* 865 F.2d 1395 (3rd Cir. 1989);

*Bermudez v. United States Department of Agriculture*, 490 F.2d 718, 723 (D.C.

Cir.), *cert. denied*, 414 U.S. 1104 (1973); *Wilson v. Lyng*, 662 F. Supp. 1391, 1396

(E.D.N.C. 1987), *rev'd on other grounds*, 856 F.2d 630 (4th Cir. 1988); *Cotton v.*

*Mansour*, 634 F. Supp. 1094, 1097–98 (E.D. Mich. 1986).

---

[1] The Food Stamp Act limits retroactive recovery to one year.  See 7 U.S.C. § 2023(b):

> In any judicial action arising under this Act [7 USCS §§ 2011 et seq.], any food stamp allotments found to have been wrongfully withheld shall be restored only for periods of not more than one year prior to the date of the commencement of such action, or in the case of an action seeking review of a final State agency determination, not more than one year prior to the date of the filing of a request with the State for the restoration of such allotments or, in either case, not more than one year prior to the date the State agency is notified or otherwise discovers the possible loss to a household.

What Defendant's argument misses is that the requirement to provide restoration of SNAP benefits flows not from retroactive relief mandated by this Court, but from *prospective* relief ordering Defendant to comply with the Food Stamp Act and implementing regulations. Specifically, 7 C.F.R. § 273.17(a)(1) requires that "the State agency shall restore to households benefits which were lost whenever the loss was caused by an error by the State agency." The only limitation on restoration is that the state agency need not restore for more than one year prior to the commencement of the lawsuit. 7 U.S.C. §§ 2023(b), 2020(b) and (e)(11). Hence, if this Court finds that Defendant's agency error resulted in a loss of benefits, then it can order Defendant to comply with the Food Stamp Act and restore benefits as part of the prospective relief.

That Defendant may also be required to provide notice to individual class members of their right to seek such restoration through the State's administrative mechanisms does not run afoul of the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332 (1979), is on all fours with the present case. In *Quern*, the Supreme Court expressly held that federal courts could require, as a part of prospective relief, that the State provide notice to the class about the existence of an administrative scheme that creates an opportunity to seek past benefits. In *Anderson v. Lyng*, 652 F. Supp. 1237 (M.D. Ala. 1987), the Court held that the Eleventh Amendment did not bar notice to the class that informs "present class members . . . of the existence

30

of state administrative remedies they may wish to pursue to obtain restoration of any past benefits that may have been wrongfully denied."

The cases cited by Defendant are inapposite. *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dept. of Health & Rehab. Servs.*, 225 F.3d 1208 (11th Cir. 2000) actually supports Plaintiffs' position. In this holding, the Eleventh Circuit reversed a District Court order mandating retroactive relief that would be paid entirely from the State treasury. But, in so doing, the Circuit noted that an order similar to one sought here, which would "enjoin state officials to conform their conduct to the requirements of federal law, even if there is an ancillary impact on the state treasury," may be permissible depending on how it is written. Of course, here, the retroactive relief is solely a function of federal statute (plaintiffs make clear that they seek only "corrective action, as required by federal law") and the benefits to be provided are 100% federally funded.

In *Summit Med. Associates, P.C. v. Pryor,* 180 F.3d 1326 (11th Cir. 1999), the Eleventh Circuit found that the 11th Amendment barred a claim against state actors in a challenge to certain aspects of an Alabama partial-birth abortion statute because no state official had enforcement authority under that provision of the statute. Here, there is no question that the State defendant is responsible for the implementation of the ABAWD requirement in Florida.

Accordingly, the narrowly tailored corrective action Plaintiffs seek as part of their request for prospective injunctive relief is not barred by Eleventh Amendment.

## VII.   VIRGINIA WR. CAN PROCEED AS THE "NEXT FRIEND" OF MICHAEL WR.

Defendant's allegation that Plaintiff  Virginia WR. cannot proceed as the "next friend" of Plaintiff Michael WR. is without merit. Federal Rule of Civil Procedure 17(c)(2) provides that "an infant or incompetent person who does not have a duly appointed representative may sue by next friend or by guardian ad litem." Plaintiffs are not required to move the Court for a finding of incompetence. *Whitmore v. Arkansas*, 495 U.S. 149 (1990). The Supreme Court said in *Whitmore* that the "one necessary condition is a showing by the proposed 'next friend' that the real party in interest is unable to litigate his own cause due to mental incapacity, lack of access to the court, or other similar disability." *Id*. at 150. Plaintiff Virginia WR has made the necessary showing.

Defendant's reliance on *Sanders ex rel. Rayl v. Kan. Dep't of Soc. and Rehab. Servs.*, 317 F.Supp.2d 1233 (2004) to support his position that Virginia WR. cannot proceed as the "next friend" of her son, Michael WR. is misplaced.  In *Sanders*, the plaintiff states in the petition "[b]ecause of communication and physical impairments caused by his medical conditions, Stuart Sanders cannot

independently represent his interest in this suit…"  The Court in *Sanders* found there were "no other relevant facts … included in the record."

This is not the case here.  In addition to the allegations in the Complaint at paragraph 117 referencing mental illness and paragraph 120, referencing an application for SSI for disability, the record includes a declaration from Virginia WR., Dkt. 4-4, and Michael WR., Dkt. 4-3. Both declarations include statements about mental illness. Further, Plaintiffs produced the medical record of Michael WR. with the diagnosis from a treating physician of mental illness including paranoid schizophrenia and depression. *See* Pls.' Resp. to Def.'s First Req. for Prod. of Docs. at 9–11.  Further, since the filing of the complaint, Michael WR.'s application for SSI disability has been approved and Michael WR. is now receiving SSI. *See* Pls.' Resp. to Def.'s First Req. for Prod. of Docs. at 59–64.

Defendant also incorrectly relies on *Whitmore v. Arkansas* 495 U.S. 149 (1990) to support his position that Virginia WR. cannot be Michael WR.'s next friend. *Whitmore* suggests a three part test for determining "next friend" standing. *Id.* at 163-164. That test is readily satisfied here.

First, the next friend must provide an adequate explanation of why the real party in interest cannot appear on his own behalf.  Here, the record shows a mental illness that precludes Michael's ability to appear on his own behalf.  Second, the next friend must be truly dedicated to the best interests of the person on whose

behalf they seek to litigate. Virginia WR. is Michael's mother, they live in the same house, and she takes care of him and looks after his best interest. Third, the next friend must have a significant relationship with the real party in interest. The relationship of a mother and son is certainly that significant relationship.

Defendant's request to dismiss Virginia WR. as next friend for Michael WR. should be denied.

## VIII. CONCLUSION

Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss.


Dated: March 30, 2017

Respectfully Submitted


Cindy Huddleston
Fla. Bar No.: 0383041
Kathy Grunewald
Fla. Bar No.: 0513090
Florida Legal Services, Inc.
2425 Torreya Drive
Tallahassee, FL 32303
Telephone: (850) 385-7900
Facsimile: (850) 385-9998
cindy@floridalegal.org
kathy@floridalegal.org


Katherine DeBriere
Fla. Bar No.: 58506

34

Northeast Florida Medical Legal Partnership
Jacksonville Area Legal Aid, Inc.
126 W. Adams Street
Jacksonville, FL 32202
Telephone: (904) 356-8371, ext. 333
Facsimile: (904) 356-8780
katy.debriere@jaxlegalaid.org


NATIONAL CENTER FOR
LAW & ECONOMIC JUSTICE, INC.
Mary R. Mannix
Greg Bass
Petra T. Tasheff
Francisca D. Fajana
275 Seventh Avenue, Suite 1506
New York, NY 10001
Telephone: (212) 633-6967
mannix@nclej.org



Counsel for Plaintiffs and
Proposed Class Counsel


By:    */s/ Petra T. Tasheff*
          Petra T. Tasheff




**CERTIFICATION OF WORD LIMIT**

Pursuant to Local Rule 7.1(F), I, Petra T. Tasheff, hereby certify that the within
memorandum of law does not exceed 8,000 words.

Dated: March 30, 2017                              */s/ Petra T. Tasheff*

Petra T. Tasheff