IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CHRISTOPHER MO. et al.,

    Plaintiffs,

v.                                  CASE NO. 4:16cv780-RH/CAS

MIKE CARROLL, in his official
capacity as the Secretary of the
Florida Department of Children
and Families,

    Defendant.
_____/

**DEFENDANT'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

Defendant submits this reply to Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss, DE 68.

**1.    The Complaint is moot as to the named Plaintiffs**

In response to Defendant's mootness argument, Plaintiffs only cite to *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970) for the undisputed proposition that termination of public assistance benefits while a lawsuit over eligibility is pending may be detrimental to the recipient. That case has nothing to do with Defendant's argument. Here, Plaintiffs' claims are moot because their SNAP benefits have been reinstated prospectively and retroactively (to the extent they are eligible for

retroactive reinstatement), and Plaintiffs have been determined to be exempt from the ABAWDs work requirements. 7 U.S.C. §§ 2020(b)(3) (exempting from work requirements household members who are mentally or physically unfit), 2015(d)(2)(B) (exempting from work requirements a parent who is responsible for the care of an incapacitated person). This means that any prospective and injunctive relief demanded in the complaint can no longer have any effect on the named Plaintiffs. Since they are exempt, and will remain so, any changes to the process for identifying persons subject to the ABAWD work requirement, and to the notices issued by and on behalf of Defendant in connection with those requirements, simply have no relevance to the named Plaintiffs. Their claims are therefore moot.

Plaintiffs do not address this argument. Rather, the only specific claim they make is that Michael WR has not received the full amount of back benefits which they believe should be restored to him. Plaintiffs admit that Michael WR has received SNAP benefits from November 14, 2016 forward, and do not specify from what earlier period he should receive benefits. DE 68 at 4. Nor do Plaintiffs explain the legal basis that supports Michael WR receiving back benefits prior to November 14, 2016. In addition to a lack of detail, the difficulty with Plaintiffs' position is that Michael WR only provided information regarding his mental condition on December 6, 2016, when a medical record was uploaded to his online file with DCF. DE 38-3 at 10-11. That medical record was uploaded after DCF made its decision based on

his application and interview, neither of which noted any physical or mental inability to work. *Id*. Because of that medical record, Defendant was able to determine that Michael WR was exempt from the ABAWDs work requirements. *Id*. at pp. 9-10. Because it was submitted within 30 days of his November 12, 2016 SNAP application, Defendant was authorized to restore benefits as of the application date. *Id.* at pp. 10-11.

Plaintiffs have been determined to be entitled to SNAP benefits and exempt or excepted from the ABAWDs work requirements, not because of this lawsuit, but because of the request of Plaintiffs' counsel to DCF to review their files, and because Plaintiffs applied for recertification of their food assistant benefits.

In addition, as set forth below in Section 5, Plaintiffs are not able to receive restoration benefits as part of any judgment in this action, because any such retroactive monetary is barred in this action by the Eleventh Amendment.

**2.    The Voluntary Cessation Doctrine does not Prevent a Finding of Mootness**

Plaintiffs argument that the voluntary cessation doctrine applies in this case to prevent a finding of mootness is wrong for at least two reasons. First, Defendant has met its formidable burden of demonstrating "that the challenged conduct cannot be expected to start up again." Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173 (11th Cir. 2007). The undisputed fact of Plaintiffs' exempt status meets that burden.

Second, consistent with what was described in *Troiano v. Supervisor of Elections,* 382 F.3d 1276 (11th Cir. 2004), there has been a change in policy in that a new Notice of Mandatory Participation (NOMP) is being used, to advise individuals that they have been identified as ABAWDs, about their work requirements, and to explain how they might identify potential exemptions or exceptions that may apply to them.  Plaintiffs argue that, since it has not been adopted as rule, that it is subject to change – but they cannot overcome the presumption that there will be no reversion back toward the prior NOMP.  The current NOMP is the product of input from Plaintiffs' counsel, feedback from the U.S. Department of Agriculture Food and Nutrition Service, and many months of work, before it was implemented effective February 1, 2017.  DE 38-1 at 5-6.

Plaintiff cites to *Wilson v. Gordon*, 822 F.3d 934 (6th Cir. 2016), and mistakenly claims it is analogous to the instant matter.  *Wilson* was a case in which the plaintiffs sought injunctive relief requiring timely processing of applications and the provision of fair hearings to those whose claims are denied.  *Id.* at 939.  The parties entered into an agreement that the state agency would specially process the Medicaid applications of the named plaintiffs and a hundred other individuals and, in return, the plaintiffs agreed to withdraw their motion for expedited briefing on two pending motions.  *Id.* at 942.  The court found that this did not render the case moot because the agreement did not provide the plaintiffs with what they were

4

seeking in the lawsuit, namely timely application processing and expedited hearings. *Id.* at 943. It only said that the state agency would review the files of the plaintiffs and additional one hundred individuals. *Id.*

The instant case is plainly distinguishable. Defendant did not merely agree to look at the files of the named Plaintiffs at the request of their counsel. Defendant, with the benefit of new applications for recertification, determined that Plaintiffs are exempt from the ABAWDs work requirements. Therefore, the things Plaintiffs complain about cannot recur. This is distinctly different from, for example, a case about timely processing of applications. An agreement to review particular case files to ensure a timely determination could only impact the pending benefit applications, and could not prevent subsequent delays in processing as yet unfiled applications. Here, Plaintiffs are exempt from the ABAWDs requirements, and do not face the future prospect of being erroneously determined to be ABAWDS, receiving a notice that they are ABAWDs (because they aren't), or receiving a notice that their benefits will be suspended for failure to comply with ABAWD work requirements.

### 3. The Claims of the Putative Class Members are Moot

In their response, Plaintiffs claim that the relation back doctrine applies in this case, and prevents dismissal of the complaint even if the claims of the named Plaintiffs are moot. Plaintiffs rely on *Jeffrey M. Stein, D.D.S., M.S.D., P.A. v.*

*Buccaneers L.P.*, 772 F.3d 698, 705–07 (11th Cir. 2014).  In contrast to the case at bar, the defendant in *Stein* made offers of judgment for complete relief, pursuant to Rule 68 of the Federal Rules of Civil Procedure, to the named plaintiffs.  *Id.* at 700-701.  The court found that the offers of judgment, even if they mooted the claims of the named plaintiffs, did not moot the claims of the putative class members.  *Id.* at 709.

From the discussion on *Stein,* it appears that the relation back doctrine applies in two circumstances: first when the claims at issue are capable of repetition, yet evading review; and "when the defendants have the ability by tender to each named plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification."  *Id.* at 706 (quoting *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1050 (5th Cir.1981)).  Neither circumstance is present in the instant case.

First, the claims of the putative class members are not among those limited cases that are "capable of repetition yet evading review."  The claims at issue here: 1) inadequate pre-termination notice (Notice of Case Action); 2) inadequate notice that putative class members are subject to ABAWD work requirements; and 3) inadequate process to determine eligibility for ABAWD work requirements, would persist until a judgment could be entered in this case.  This case is thus unlike those finding that the capable of repetition yet evading review exception applied.

6

*Gerstein v. Pugh,* 420 U.S. 103 (1975), involved a procedure permitting detention of individuals for 30 days without a probable case finding. Similarly, at issue in *Swisher v. Brady,* 438 U.S. 204, 206 (1978), was a Maryland juvenile justice scheme that provided for the use of masters in juvenile proceedings, which were to be promptly confirmed, modified or remanded by the presiding judge. Finally, *County of Riverside v. McLaughlin,* 500 U.S. 44, 47 (1991), involved the California procedure for probable cause determinations for individuals arrested without a warrant. What these cases have in common is that "the passage of time inevitably mooted claims of that kind." *Stein,* 772 F.3d at 706.

Secondly, the instant case is not controlled by *Stein* because it does not involve an offer of judgment or other action that has been taken, or could be taken by, Defendant unilaterally to moot the claims of the named Plaintiffs and putative class members. The named Plaintiffs received determinations of SNAP eligibility and ABAWD exemption, not due to any tender or offer by Defendant, but because they each submitted benefit applications to Defendant in accordance with Defendant's normal policy and procedures. Had the named Plaintiffs not reapplied for benefits after this lawsuit was filed, they would not have received "full relief."

This case, then falls under the general rule "that a suit brought as a class action must . . . be dismissed for mootness when the personal claims of the named plaintiffs

7

are satisfied and no class has properly been certified." *Zeidman,* 651 F.2d at 1045. Following that general rule, Plaintiffs' complaint should be dismissed.

**4.    The NOCA and NOMP Comply with the SNAP Act and Due Process**

In their Response, Plaintiffs fail to show that Defendant's Notice of Case Action (NOCA) violates either the SNAP Act, its implementing regulations, or due process. There is no dispute regarding the actual content of the NOCA, so whether it is legally sufficient can be determined as a matter of law.

Plaintiffs first argue that the NOCA fails to sufficiently apprise individuals of the "specific" act of non-compliance leading to the issuance of the NOCA, fails to identify the statutory exemptions to the ABAWD work requirements, fails to explain "good cause" for noncompliance, and fails to inform recipients of what can be done to avoid the termination of SNAP benefits. Of the statutes and rules listed by Plaintiffs, only 7 C.F.R. §§ 273.7(f)(1)(ii) and 273.13(a)(2) have anything to do with the NOCA. Defendant's Motion to Dismiss demonstrated graphically that the NOCA complied with 7 C.F.R. § 273.13(a)(2). DE 63 at 11-12. 7 C.F.R. § 273.7(f)(1)(ii) states that the NOCA:

> must contain the particular act of noncompliance committed and the proposed period of disqualification. The notice must also specify that the individual may, if appropriate, reapply at the end of the disqualification period. Information must be included on or with the notice describing the action that can be taken to avoid the disqualification before the disqualification period begins. The disqualification period must begin with the first month following the

8

> expiration of the 10-day adverse notice period, unless a fair hearing is requested.

The rule provides no further specifics.

The NOCA informs recipients that "[y]ou and your Food Assistance household cannot get Food Assistance benefits for **one month**. The other members of your household may reapply for Food Assistance benefits after one month. The head of your Food Assistance household may not get Food Assistance benefits until they complete the work activity or become exempt from work activities." DE 4-6. It also advises that "[i]f you comply before the begin date of the penalty, we will not impose the penalty. To comply with the food assistance work requirements, contact the CareerSource at http://www.floridajobs.org/onestop/onestopdir/ or go to the CareerSource office in your area. If you have a good reason for not complying with work requirements and can give us proof of the reason, contact DCF at the Customer Call Center at 1-866-762-2237." *Id.* This is clear compliance with 7 C.F.R. § 273.7(f)(1)(ii). The NOCA may not read the way Plaintiffs would like it to, but that does not constitute a violation.

Plaintiffs contend that *Barry v. Corrigan,* 79 F. Supp. 3d 712 (E.D. Mich. 2015), *aff'd sub nom. Barry v Lyon,* 834 F.3d 706 (6th Cir. 2016), supports their position that the NOCA is inadequate. That case is readily distinguishable. That case involved SNAP recipients who received "criminal justice disqualifications," as defined by state law. *Lyon,* 834 F.3d at 711. Michigan law provided for five

9

different types of criminal justice disqualifications. *Corrigan,* 79 F. Supp 3d at 742. The notice provided to the plaintiffs listed only "criminal justice disqualification," and did not specify which type of disqualification was at issue. *Id.* The notices also directed recipients to "contact your local law enforcement agency to resolve." *Id.* In addition, the state agency responsible for SNAP benefits directed its staff not to inform recipients of their criminal justice status. *Id.* at 743.

In the instant case, by contrast, the NOCA informs recipients that SNAP benefits are due to be terminated because "you did not complete the work requirements for the food assistance program." DE 63 at 11.  As was the case with the letters received by Plaintiffs, every individual who receives a NOCA will have previously received a Notice of Mandatory Participation (NOMP) which explains the ABAWD work requirements and directs them to a website to complete an Employment and Training (E&T) program orientation and assessment, and to contact their local career center or the Department of Economic Opportunity if they need help.  DE 38-1 at 3, Ex. A.   After completing the orientation and assessment, and based on the results of the assessment, participants are directed to one of several components of the E&T program, such as workfare or job search.  DE 4-2 at Ex. 1, pp. 6-23.   Thus, anyone who receives a NOCA will know the particular ABAWD work requirement he or she is accused of failing to meet.  Under these circumstances,

the NOCAs provided to Plaintiffs satisfy the SNAP statutes as well as due process requirements.

Likewise, as set forth in the Motion to Dismiss, the revised NOMP fully satisfies the requirements of the SNAP Act and due process. DE 63 at 14-18.[1]

### 5. The Eleventh Amendment Prohibits an Award of Back Benefits to Plaintiffs

For their proposition that the Eleventh Amendment would allow relief in the form of restoration of past benefits, Plaintiffs primarily rely on a footnote in a circuit court case that was reversed on appeal by the Supreme Court. In *Foggs v. Block,* 722 F.2d 933, 941 n.6 (1st Cir. 1983), *rev'd sub nom. Atkins v. Parker,* 472 U.S. 115 (1985), the First Circuit said "we see no Eleventh Amendment bar to ordering the restoration of benefits."

In a string cite following a quote from *Foggs,* Plaintiffs mention *Cotton v Mansour,* 634 F. Supp. 1094 (E.D. Mich. 1986). In that case, the court held that the Director of the Michigan Department of Social Services was not entitled to Eleventh Amendment immunity from a retroactive award of food stamp benefits. *Id.* at 1097. However, Plaintiffs fail to mention that the district court decision was reversed on appeal on the very issue for which it is cited. The Sixth Circuit stated:

> We agree that administrative costs are distinguishable from the stamps themselves. We cannot, however, agree with the district court's conclusion under Supreme Court and lower court precedent that, "the

---

[1] Plaintiffs' rulemaking argument is addressed in Section 2 above.

> costs of arranging retroactive payments which themselves are paid by the federal government, do not involve the Eleventh Amendment." From the remainder of the district court's opinion, it is apparent that the district court held that if the stamps themselves were paid by the federal government, the state could not claim eleventh amendment protection solely related to its administrative burden. We find this interpretation inconsistent with Supreme Court precedent.

*Cotton v Mansour,* 803 F.2d 1241, 1246 (6th Cir. 1988), *cert. denied sub nom. Cotton v. Babcock,* 493 U.S. 1042 (1990) (*Mansour II).* The court found that the *Ex Parte Young* exception to Eleventh Amendment immunity did not apply because "the relief sought is solely retroactive and would impose direct administrative expenses on the State Treasury," and held that "[b]ecause the relief ordered by the district court against the defendant was retroactive, would require expenditures from the State treasury, contained no prospective relief to which a *Quern*-type notice could be ancillary and was inappropriate for declaratory relief, we hold that the relief requested by plaintiff and granted by the district court is barred by the eleventh amendment. *Id.* at 1246, 1250.

As can be seen from the above, Plaintiffs make the identical Eleventh Amendment argument that was made in *Mansour II,* and it deserves the same fate.

## Conclusion

Based on the foregoing, and on Defendant's Motion to Dismiss, Defendant respectfully requests that the Court dismiss Plaintiffs' Complaint.

**PAMELA JO BONDI**
**ATTORNEY GENERAL**

*/s/ William H. Stafford III*
WILLIAM H. STAFFORD III
Florida Bar No. 70394
Senior Assistant Attorney General
William.Stafford@myfloridalegal.com

*/s/ Karen A. Brodeen*
KAREN A. BRODEEN
Senior Assistant Attorney General
Fla. Bar No.: 512771
Karen.Brodeen@myfloridalegal.com

Office of the Attorney General
Civil Litigation
The Capitol - PL 01
Tallahassee, FL 32399-1050
(ph) 850-414-3300
(f) 850-488-4872

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on Cindy Huddleston, Esquire, and Kathy Grunewald, Esquire, Florida Legal Services, Inc., 245 Torreya Drive, Tallahassee, Florida  32303, via email to cindy@floridalegal.org, and kathy@floridalegal.org; Katherine DeBriere, Esquire, Northeast Florida Medical Partnership, Jacksonville Area Legal Aid, Inc., 126 W. Adams Street, Jacksonville, Florida 32202, via email to katydebriere@jaxlegalaid.org; and Greg Bass, Esquire, Francisca Fajana, Esquire, and Petra T. Tashef, Esquire, National Center for Law & Economic Justice, Inc., 275 Seventh Suite 1506, New York, New York 10001, via email to tasheff@nclej.org, on April 13, 2017.

*/s/ William H. Stafford III*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

In accordance with Local Rule 7.1(F), the undersigned hereby certifies that the number of words in the above reply memorandum which count towards the 3200-word limit totals 3072 words.

*/s/ William H. Stafford III*